# EXHIBIT ONE

**Robert Rose**
**485 Harbor Side St., Unit 509**
**Woodbridge VA  22191**

January 19, 2007

The Honorable Ricardo M. Urbina
U.S. District Court for the District of Columbia
E. Barrett Prettyman U.S. Courthouse
333 Constitution Avenue, NW, Room 6006 Annex
Washington, DC 20001

Dear Judge Urbina:

I am Executive Director of two nonprofit organizations involved in promoting fuel cells, an advanced energy generating technology.  I have lived in the Washington area since 1973.  I founded the Breakthrough Technologies Institute, a private, independent educational organization, in 1993, and launched its Fuel Cells 2000 program in that year.  I founded the US Fuel Cell Council, the industry trade association, in 1998.  The Council has more than 100 members today.

I have known Shang Hsiung for about 15 years, beginning early in my work with fuel cells.  Shang managed the Department of Transportation's fuel cell bus program.  We are not social friends.  We have been colleagues pursuing the same agenda along parallel paths, with regular interaction.  We saw each other at events in Washington and at conferences around the world.  (I have never had a financial relationship with DOT nor a program that Shang managed; DOT has never been a member of the USFCC.)

Shang did an excellent job overall, from my perspective.  The fuel cell bus program is the oldest and longest running fuel cell vehicle development program.  It continues to enjoy the confidence of DOT and Capitol Hill.  Indeed, the program was moved from DOE to DOT because of perceived strength of DOT capability.  Program participation has expanded under Shang's leadership.

Shang has always dealt honorably with me, and as far as I know, he has dealt honorably with his contractors and other collaborators.  Disclosure of his crime was a shock to me, and to everyone in our industry with whom I spoke.  Honestly, it seemed so out of character that people simply shook their heads in disbelief.  He was never an "operator," nor did he ever in my presence act in an inappropriate or unseemly manner toward any individual, male or female.

Nothing can excuse his actions.  And he has been rightly brought to justice.  But from my experience, he has always been a straightforward, honest, "good" person. If there ever were a case where additional punishment will serve no corrective purpose, it is this one.  We all have demons in our private lives and private thoughts.  Sadly, his got the better of him.

 I hope you will use whatever flexibility you have in deciding sentence for Shang.

Sincerely,

Robert Rose

January 14, 2007

Lisa Callaghan Jerram
10228 Day Avenue
Kensington, MD 20895

Judge Ricardo M. Urbina
U.S. District Court for the District of Columbia
E. Barrett Prettyman U.S. Courthouse
333 Constitution Avenue, NW
Room 6006 Annex
Washington, DC 20001

The Honorable Ricardo M. Urbina:

I am writing to you on behalf of Shang Hsiung.   My name is Lisa Callaghan Jerram.  I am 40
years old and have been employed as the Technology Director for Breakthrough Technologies
Institute, a Washington, D.C. non-profit, for one year.  I work to promote clean, energy-efficient
technologies through research, education and outreach.  Before this job, I did essentially the
same work for the Northeast Advanced Vehicle Consortium (NAVC), a Boston non-profit.

Through this work, I have known Shang for approximately ten years, and worked with him on a
fairly regular basis for about six years.  Shang was the program director for a Department of
Transportation (DOT) program through which my previous employer, the NAVC, received
funding, and I worked with Shang on several projects the NAVC carried out for the DOT.  We
would be in contact on these projects on approximately a bi-weekly basis, and I was in contact
with him at numerous work conferences.  We had a good working relationship.  We were not
extremely close in a personal context, but our relationship was very friendly and collegial.

I was surprised and shocked to hear the news of why he had left the DOT because, in my
dealings with him, he had never behaved inappropriately or in a non-professional manner.  As I
mentioned, we attended many of the same work events, and I never saw him behave in an overly
personal fashion, or in any way that would cause people to gossip about his behavior.  In fact, in
the months that passed when we did not know why he had left DOT, my speculations did not
include any inappropriate or illegal behavior because that would have seemed most out of
character.

Shang also seemed to be genuinely committed to his work at the DOT to promote clean
transportation technologies.  One trait that stood out was his commitment to the integrity of
DOT-funded research and reports.  He seemed to truly want his projects to succeed for the best
reasons -- to advance clean efficient technology -- and wanted the results of publicly-funded
research to be honestly reported and made widely available.  This attitude is not always common
in an industry where people often have their own hidden agendas.  He also was generous about
sharing credit for work and actively avoided taking credit for DOT projects carried out by others.

Finally, I would like to mention that the work he spearheaded at DOT was very valuable. As one example, he personally shepherded through a report on hybrid buses that the NAVC wrote with DOT funding; this report is often referenced in the industry and the general media. He also spearheaded a fuel cell bus demonstration program which is underway and which has attracted significant positive reaction from the industry and media.

I was very disappointed to hear what did happen, of course. I cannot claim to know all that really happened or why, but Shang did send an email to explain why he was on leave from DOT and express his great sorrow at what he had done and at having abused his colleagues' trust in him. I found it to be sincere and contacted him to let him know this. From his emails, it sounds as though he is on his way to making amends for his actions and that he is taking his recovery seriously. While I cannot condone what he did, I can say that his interactions with me have always been appropriately professional, that I found him a pleasant, kind colleague, and believe that he has made significant positive contributions to society through his work.

Regards,

Lisa Callaghan Jerram

December 4, 2006


Albert Fang, Ph.D.
12009 Wooded Vista Lane
San Diego, CA 92128


Judge Ricardo M. Urbina
U.S. District Court for the District of Columbia E. Barrett Prettyman U.S. Courthouse
333 Constitution Avenue, NW
Room 6006 Annex
Washington, DC 20001

The Honorable Ricardo M. Urbina:

My name is Albert Fang. I'm 32 years old and I'm a development scientist at a pharmaceutical company in San Diego, CA. I was recently informed of the events that have transpired over the last 5 years, culminating in the guilty plea by Shang Hsiung on October 26, 2006. I am writing to you to ask for your leniency at his upcoming sentencing in March of 2007.

I am a former player, a former teammate, but most importantly, a friend of Shang Hsiung. I was first introduced to Shang as a 16 year old high school student with aspirations of playing club volleyball as an extracurricular activity. For the next three years of high school followed by 2 years of college, he was my coach and a mentor. When I played for him, he and his family gave their time and effort without asking for compensation. He only asked for us to support ourselves and to respect the sport with an honest effort on and off the court. I also had the opportunity to play along side him as a teammate for several years after high school. He has always been a loyal friend. He has always lent a helping hand. He has always spent the time to listen and lend a word or two of advice. In my experience, he has always had a pure heart.

From my understanding of the case, I am deeply disturbed by his actions. Obviously, there are no excuses that can justify what has happened. I cannot begin to imagine the impact this event has had on his family, but I can speak to its impact on me – I am disappointed, I am saddened, and I am upset. But, I am also forgiving. He has earned my trust from his past actions, and he will eventually earn my forgiveness for his recent actions.

The damage of this event on his family, his reputation in the community, his future is irreparable. His impending incarceration must also weigh heavily upon him and his family. His actions have already permanently affected a life that crossed the lives of many other people, and he has lost what he has spent his entire life earning… respect. Therefore, I ask that his sentence be lenient.

I hope that you will find an appropriate sentence for a man that has been humbled, for a man that has given the community his passion for volleyball, for a man that needs a second chance.

Sincerely,

Albert Fang



*Colesville United Methodist Church*

52 Randolph Road, Silver Spring, Maryland 20904
Phone: 301-384-1941 / Fax: 301-879-8542 / www.cumc.org

Rev. Victor E. Sawyer
Pastor

Deborah J. Keaton, Director
Christian Family Education
& Youth Ministries

December 14, 2006

Judge Ricardo M. Urbina
U.S. District Court for the District of Columbia
E. Barrett Prettyman, U.S. Courthouse
333 Constitution Avenue, NW
Room 6006 Annex
Washington DC 20001

The Honorable Ricardo M. Urbina:

I write on behalf of Mr. Shang Hsiung. My name is Rev. Victor E. Sawyer, 58 years old, employed by the Baltimore-Washington Conference as Senior Pastor of Colesville United Methodist Church, 52 Randolph Road in Silver Spring, Maryland.

I have known Shang for the past eighteen months in my capacity as pastor of this congregation where he is a member. Shang attends worship services regularly, every week. He is also very active in the community as coach for a youth volleyball team.

Following his arrest and the filing of charges against him, Shang came to me for guidance and counseling. He confessed that he had committed some very serious offenses. He was very remorseful as he described the offenses in great detail. I have been holding weekly counseling sessions with him.

Shang has already begun the process of rehabilitation as he continues in regular worship, psychological evaluation and assessment. Last year, he lost his mother, and has been caring for his father who is in poor health.

Shang and his wife, Wanda, have one daughter, Amanda, who is a junior in college. Amanda is devastated by her father's troubles, and incarceration would negatively impact her studies.

Your Honor, I plead with you for mercy in Shang's sentencing. Please consider probation or home detention rather than prison time.

I thank you for your consideration.

Respectfully submitted,

Rev. Victor E. Sawyer
Senior Pastor

December 13, 2006


Judge Ricardo M. Urbina
U.S. District Court for the District of Columbia
E. Barrett Prettyman U.S. Courthouse
333 Constitution Avenue, NW
Room 6006 Annex
Washington, DC 20001

The Honorable Ricardo M. Urbina:

We (David and Linda Wong) are writing on behalf of Shang Hsiung, with prayers and hopes that you will be as lenient as the law allows in sentencing Shang for his transgressions.

As residents of Potomac Maryland, David (age 64) is a Principal with Mitretek Systems, a not-for-profit research and technology organization that works in the public interest; and Linda (age 52) is the volunteer Administrator of the Chinese Community Church of Washington DC and a part-time media assistant at Hoover Middle School, Potomac Maryland.

Our first meeting with Shang was in the summer of 2002 when our son, then a junior in high school, attended Shang's volleyball camp. Since then he has been part of the Maryland Volleyball Program run by Shang and his wife, as a junior Olympic team member and during the last two years as a member of the University of Maryland Men's Volleyball team which was coached by Shang. As a result of his coaching and encouragement, our son has gained both a passion for and excellent skills in the game of volleyball.

We were stunned to hear of Shang's transgressions, because there were never any indications in our travels with the team and working with him that he led other than an exemplary lifestyle. He is/was devoted to his family and volleyball. He is recognized locally and nationally as a leader in volleyball programs at all levels from pre-teens to adults. In the 2006 Collegiate National Club Volleyball tournament, Shang led his Maryland team to the National finals and was recognized as the Coach of the Year. He encouraged honesty, sportsmanship, perseverance, and excellence in his players and taught that abiding by the rules and having fun were compatible traits.

We believe your consideration for a lenient sentence would best serve the community by returning a citizen who has made a positive impact on countless young men not only by teaching them volleyball skills, but also confidence and self-esteem.

Sincerely yours,

David and Linda Wong
9517 Lost Trail Way
Potomac, MD  20854

Kenneth N. Hollies
1 Bel Pre Ct.
Rockville, MD  20853-2029

Judge Ricardo M. Urbina
U.S. District Court for the District of Columbia
E. Barrett Prettyman U.S. Courthouse
333 Constitution Avenue, NW,  Room 6006 Annex
Washington, DC  20001

December 10, 2006

Re:    Sentencing of Shang Hsiung

Dear Judge Urbina:

I write with a heavy heart for the destruction that Shang Hsiung has wrought on his life, family
and community, although also with hope for the future. I have known Shang for nearly 30 years,
having met him through volleyball when I returned to this area in the mid-70's after dropping out
of college for a while. I am proud to know him, as he has dedicated his life to helping others
through volleyball. Over the years, I have come to have the greatest respect for Shang; he is a
role model, hard worker and dedicated to helping others improve themselves, myself included. I
was a teammate of his wife, Wanda, before she and Shang married. I played with and against
Shang in competitive volleyball as both player and coach from the late 70's onward. He
developed the Maryland Volleyball Program into a national force; since we were also both
referees, I met and worked with Shang regularly in more administrative contexts involving
referee organizations and the Chesapeake Region of USA Volleyball. More recently, he has
coached my two sons, taking both of them to the Junior Nationals this past summer in
Minneapolis.

In the time I have known Shang, I returned to school for a bachelor's degree in College Park,
followed by a law degree from the University of Virginia. I returned again to this area (I am a
native of Bethesda: Wyngate ES, North Bethesda Junior High, Walter Johnson HS) when I was
hired by the United States Postal Service, as a summer law clerk in 1981 and then as a career
employee in 1982. Today, I litigate econometrics as an attorney in the Legal Policy and
Ratemaking Law section of the Postal Service Law Department (the Postal reform bill that was
sent to the President over the weekend makes my job obsolete, so the future portends some
changes). Shang was a career employee of the Department of Transportation, located near
Postal Service Headquarters, so I occasionally saw Shang in the L'Enfant Plaza Promenade, an
underground shopping mall that almost connects our federal agencies. Shang is, of course, no
longer employed by the Department of Transportation, and from what I understand, is unlikely to
regain federal employment.

I learned about Shang's criminal activity from one of the coaches who worked with him in the
Maryland Volleyball Program, which Shang and Wanda built into one of the most successful
youth programs in the country. I was truly stunned and upset when I heard what Shang had
done; it was difficult to reconcile the man I know him to be with the criminal acts he carried out
for so long. He has lost his job and the respect of many, bringing shame upon himself.
Fortunately, Wanda has stuck by Shang; so do I. When I spoke with Shang, he described to me
how his criminal behavior resembled an addiction, wherein the risk he was taking generated a
kind of exhilarating high that he repeatedly sought out. That's no excuse for his criminal

conduct. He was bound to get caught; fortunately, he has now also obtained professional help with his destructive behavior.

Shang also explained that he considered contacting me in a professional capacity after he was arrested. He ultimately chose not to do so because he perceived a potential for my having a conflict of interest: since Shang coached my sons contemporaneously with his amoral, criminal conduct, he figured that I might also see my family as having been injured by his criminal conduct. Frankly, Shang's hesitance in calling on me illustrates the fine judgment I have come to expect from him. Where was that fine judgment when he contemplated taking his criminal actions? Clearly he did not rely upon it at the time, but just as clearly, nor will he take any such actions again.

My wife – also a coach with Shang in the Maryland Volleyball Program – and I debated how to tell our sons about Shang. In this information age, however, word of his guilty plea spread like lightning among youthful players; as such our sons already knew. By now, the shame that accompanies Shang's conduct has spread throughout the community, volleyball and otherwise.

My understanding, your honor, is that you have some discretion in determining Shang's sentence. My earnest hope is that you do not order him to be incarcerated. Shang has already stained what had been a respected life. He has lost his livelihood and threatened the sanctity of his family. He has foresworn contact with the Maryland Volleyball Program, its youths, graduates and parents, into which he put his heart and soul for more than 20 years. There is essentially zero likelihood that he will repeat anything like the criminal acts of which he is guilty, so the goal of specific deterrence is already met. Shang is shamed and ashamed. Please let him begin immediately to put his life back together.

Thank you – at the least for listening – and perhaps for more,



Kenneth N. Hollies
Attorney, Legal Policy and Ratemaking Law, USPS Law Department
475 L'Enfant Plaza, SW  Rm. 6646
Washington, DC  20260-1137
202-268-3083

KENNETH N. HOLLIES
ATTORNEY
LAW DEPARTMENT · LEGAL POLICY & RATEMAKING LAW

**UNITED STATES POSTAL SERVICE**

475 L'ENFANT PLAZA SW
WASHINGTON  DC  20260-1137
202-268-3083  FAX: 202-268-3084
www.usps.com    EMAIL: kenneth.n.hollies@usps.gov

# THE FANG GROUP

December 11, 2006

The Honorable Judge Ricardo M. Urbina
U.S. District Court for the District of Columbia
E. Barrett Prettyman U.S. Courthouse
333 Constitution Avenue, NW
Room 6006 Annex
Washington, DC 20001

The Honorable Ricardo M. Urbina:

I am writing this letter to you today in support of Mr. Shang Hsiung. Mr. Hsiung currently has a case on your docket that is awaiting sentencing. Like many others, I was stunned to hear about Shang's case given my personal relationship with him.

For the past four years, I served President George W. Bush as the Deputy Director for the White House Initiative on Asian Americans and Pacific Islanders. Earlier this year, I resigned my position to start my own management consulting firm called The Fang Group.

I have known Mr. Hsiung for over 20 years now. I first met Shang in 1986 when I was attending the University of Maryland. At the time, I was playing on the University's Men's Volleyball Team, and Mr. Hsiung became our new coach. Being one of the original team members during this transition, it was not an easy process to undertake. Our team faced a great deal of adversity that we had to overcome. However, because of Mr. Hsiung's dedication to the team and his leadership skills, our team very quickly became one of the elite programs in the east coast.

Personally, during my four years on the team, Mr. Hsiung not only taught me about the game of volleyball, he taught me essential life lessons that I still carry with me today. From Shang, I learned about leadership skills, teamwork, dedication, fair play, and most importantly respect. Furthermore, he always made sure that we were not only focused on intercollegiate sports, but also on our education and involvement with our community and youth. In addition to coaching our team, Mr. Hsiung founded a volleyball academy where he coached several elite youth volleyball teams in the Washington, DC metro area. He made sure that the members on my team would actively serve as mentors to the younger kids. I will always be grateful to Shang for everything he has done to shape my life and will continue to support him and be friends with him.

While I am not condoning his actions, I believe there are many factors that should be weighed into your sentencing decision. I would respectfully request that when you make your ruling, that you judge Mr. Hsiung not only on the case before you, but also take into account his history of great service to the community and show some leniency. This will allow him to continue to seek any medical help he may need and also return back to the community as quickly as possible to restore his life and family.

Sincerely,

Erik F. Wang

December 6, 2006

Judge Ricardo M. Urbina
U.S. Court for the District of Columbia
E. Barrett Prettyman U.S. Courthouse
33 Constitution Avenue, NW
Room 6006 Annex
Washington, DC 20001

The Honorable Richard M. Urbina,

My name is Stephen Van Vreede, and I am a 33-year-old resume writing and career
coaching professional. I now reside outside of Rochester, New York with my wife of 11
years and my 2-year-old daughter. I first met Shang Hsiung in the fall of 1991 shortly
after arriving on the campus of the University of Maryland as a freshman. I was trying
out for the Maryland Men's volleyball team against many individuals that had played for
Shang in the local area. As I was reared in the Philadelphia area, I was not familiar with
Shang or his volleyball background. Despite my concerns about being an "outsider," I
made the freshman team and proceeded to develop a strong relationship with Shang over
my 4 years at Maryland and the years thereafter.

Shang instilled a strong sense of discipline in me that facilitated maturation as a player
and as a student. I have always respected the time and resources Shang has devoted to the
Maryland Men's volleyball program and to the other area teams with which he is
involved. He has had a tremendous influence over many youth that has been positive and
far-reaching.

I understand the charges that have been filed and the plea that has been accepted in
Shang's case. His actions were wrong and unjustifiable. However, based on my
knowledge of his character and judgment, which were not in evidence when he was
committing these wrongs, I believe some grace and mercy should be mingled with
justice. Grace and mercy cannot be earned, and when someone transgresses the law and
knows that the grace and mercy shown to them were unmerited, great change can occur. I
humbly ask that you consider this request when evaluating Shang's case.

Sincerely,

Stephen C. Van Vreede

Scott Zanni
17004 Olde Mill Run
Rockville, MD 20855
December 6, 2006

Judge Ricardo M. Urbina
U.S. District Court for the District of Columbia
E. Barrett Prettyman U.S. Courthouse
333 Constitution Avenue, NW
Room 6006 Annex
Washington, DC 20001

The Honorable Ricardo M. Urbina:

My name is Scott Zanni. I have known Shang Hsiung since the fall of 1988 when I was a
student-athlete on his volleyball teams at the University of Maryland, College Park. Shang
was my college coach for four years and I have remained in close contact with him since my
graduation in 1992. I am currently employed as a high school teacher and coach in
Montgomery County, Maryland. Shang had a profound impact on many of beliefs regarding
how to work with young student-athletes. Part of who I am today is a result of Shang's work
with me.

When the news broke of Shang's alleged criminal activity I was one of the handful of people
he emailed explaining some of what he had done and how bad he felt about his actions.
Needless to say, I was totally stunned. Based on my twenty year relationship with Shang,
first as a player and later as a friend, I could never have imagined that Shang would have
engaged in such illegal activities. I am extremely disappointed in his actions and feel that he
let down a great many people including his family, friends and former and current student-
athletes. I recognize the actions Shang has taken are wrong and should be punished. I
believe that Shang deserves legal punishment. However, I also believe the sum of his
positive contributions to his community should be considered when you sentence him.
Shang has contributed much more to the community than nearly anyone I know. Please
allow me to describe some of the positive contributions Shang has made to his community.

During the time I have known Shang he has been the coach of the University of Maryland
Men's Volleyball team. He was coaching the team before I started at Maryland in 1988 and
was still coaching until this past fall. During this entire time Shang has never been paid by
the university, he worked entirely as a volunteer. During this twenty year coaching career,
Shang took his own vacation time to travel with the team, and he committed to practicing in
the evening with the team, well after his work day. Over the twenty years he surely has
donated thousands of hours of his time coaching young adults and teaching them how to play
the game of volleyball.

Likewise in 1985 he started, built and continued to run the Maryland Volleyball Program
and had been doing so for over 20 years. This program was designed for boys from ages 11-
18 to compete on club volleyball teams that traveled the country competing in local, regional
and national tournaments. Shang, with help from his wife Wanda, ran every element of the
organization for much of the twenty plus years. This included every organizational aspect
from buying uniforms to registering teams for tournaments to making the travel plans for
the players and parents. Again this was all on a volunteer and unpaid basis. I'm certain
that over the course of the past 20 years Shang has spent thousands of hours of his free time
to work with kids and travel all over the country with him.

Shang was more than just a coach for many kids at the high school and college level. He was a mentor who strived to teach kids not only the right way to play the game of volleyball, but how those lessons were easily transferred to real life situations. Many of us who played for Shang believe we learned more than just the game of volleyball from him. He helped us grow up and helped us become some of who we are today. Many of his players are now in the coaching field themselves, some at the collegiate level, some at the high school level, but many also donating their time to give back to the game.

After my graduation, I coached for several years (1992-1999) with Shang and his wife Wanda as part of the Maryland Volleyball Program. I've also been a high school coach from 1992 to the present (his wife Wanda is one of my peers in Montgomery County). Even though I stopped coaching with Shang in 1999 I have remained in close contact with him as a friend (often talking volleyball). During this entire time Shang has served as a role model for kids. He not only modeled how to play volleyball, but how to approach life. I know from first hand experience that he impacted the lives of a very many young people that he encountered. Part of the reason that I'm a coach today is because of the lessons that I learned from Shang.

I am aware that Shang is due to be sentenced in March for the criminal activity he has pled guilty to. I would respectfully request that when considering an appropriate sentence for Shang you weigh the contributions, all on a volunteer basis, he has made to his community over the past twenty years.

Respectfully,

Scott A. Zanni
Magruder High School Teacher

December 2, 2006

Judge Ricardo M. Urbina
U.S. District Court for the District of Columbia
E. Barrett Prettyman U.S. Courthouse
333 Constitution Avenue, NW
Room 6006 Annex
Washington, DC 20001

The Honorable Ricardo M. Urbina:

My name is Michael Webster and I am 33 years old. I am the Head Women's Volleyball Coach at
Georgia State University and reside in Norcross, GA. I am writing to you today on behalf of Shang
Hsiung. Shang coached me in the sport of volleyball in camps and club during high school and through 4
years of college. So I have known him for almost 20 years.

Obviously, early on he was primarily my coach, someone who I knew spent countless hours coaching me
and my team as well as other teams in a variety of age groups. Many times he would be working with 3
teams at the same time with limited help. I also know that he did this 2-3 times a week. He gave me and
so many others like me an opportunity when we would not have had that opportunity otherwise.

As I played for Shang into college, I also found him to be a mentor. I had frequent interaction with him
as the President of the University of Maryland Men's Volleyball Club for 3 years. I began my coaching
career while in college with his encouragement and have remained in occasional contact over the last 8
years as I have moved up the college coaching ranks. I simply may not be where I am today without his
influence in my life.

The events that have led me to write this letter to you today could not have been a greater shock to me,
my wife, my former teammates or my parents. I have always known Shang as a humble and generous
man with his time and talents. While I know by his admittance that he committed these crimes, they seem
to be against all that I know about him in my heart. I ask that you take into account all the years of
service to all of the young men he has helped mentor and continues to mentor when you decide on his
sentencing. I honestly believe more positive things will be accomplished by keeping him in the
community than by confining him.

Thank you for hearing my thoughts and may God grant you wisdom as you make your decision.

Sincerely,

Michael Webster

November 13, 2006

Judge Ricardo Urbina
U.S. District Court for the District of Columbia
E. Barrett Prettyman U.S. Courthouse
333 Constitution Avenue, NW
Room 6006 Annex
Washington, DC 20001

The Honorable Ricardo M. Urbina:

I am writing this letter in support of my husband, Shang Quen Hsiung. He has pled guilty to one count of wire fraud as a result of using fraudulent checks and credit card numbers to pay for assignations with escorts while he was traveling on business with the Department of Transportation. .I will try to share with you my turbulent emotions and opinions on this matter.

I am Shang's wife; we've been married for 26 years and I knew him about 4 years before we were married. I am almost 49 years old and we live in Takoma Park, Maryland. We have one daughter, Amanda, who is 20 years old and in her third year at Vassar College in Poughkeepsie, New York.

I am not sure how to begin this letter. This ordeal began for me in the middle of September, the day the charges were filed electronically and the Washington Times and Channel 7 ran the story. That is the day that Shang broke down and told me what had happened and what he had done. He had delayed telling me in the vain hope that charges would not be brought forward, but that day it became apparent that that would not be the case. I had many emotions running through me at that time (and still do), but first and foremost I realized how broken Shang was and how those emotions would have to be dealt with later. It was also fortunate that, like many wounded people, I was numb and thus able to concentrate on my husband's state of mind.

My first thoughts when hearing this sordid story wer... incredulity. It may be hard to believe but I couldn't decide which was more difficult to grasp: that Shang had sexual relations with other women or that he used fraudulent credit cards and checks. It was far less personal and thus painful to deal with the financial aspect of his crime, but I couldn't get my head around the idea that he would "steal" money from someone else. It was very damaging to my self-respect and self-image that my husband was unfaithful, but at least could see that in his busy travel schedule it might be tempting and he had tried to get me to accompany him whenever he traveled; it just didn't often work out with my jobs and our daughter's school schedule so I didn't often go with him.

One might wonder why it would be so difficult to picture Shang misusing someone else's funds. I have seen him in countless situations over the years, and Shang has always been very exacting about not taking money from friends, relatives or acquaintances. He has run a Junior Olympic Volleyball program for 20 years and coached and directed the University of Maryland men's club volleyball team during that same period, and Shang has been meticulous in figuring out the amount each player owed.

We have spent countless dollars buying merchandise for the boys to sell as fund-raisers to help defray the cost of their season. We didn't get the money back until all the product was sold (or if it wasn't, we didn't necessarily get back all of our investment.) In the same way, we bought all the uniforms and sold them back to the boys at cost, again being left with the overages and not getting reimbursed for them. There is no longer a market for the shorts we started with; boys don't wear shorts (well) above their knees. This was just part of the way Shang ran the program. It was important, and we invested our time and money and never looked to get full reimbursement back.

I did accompany Shang on some of his business trips, and I saw the careful accounting he did for his business expenses. He was careful not to mix the few tourist or personal things we did with his business travel costs. I couldn't believe how little time we had to be tourists when I did accompany him on business. He had working dinners (which I attended even though I couldn't follow much of the conversation) almost every night wherever we were, and our trip to China in January provided only a few hours of free time before we went to the airport on our last day. I couldn't understand how he had 8 hours to spend with an escort on any of these trips as was stated by the prosecution in your courtroom until he explained that the 8 hours went through the night. I was also amazed at the amount of time he spent on DOT affairs even when he was on "vacation" and traveling with volleyball. He would spend at least an hour nightly in our hotel room catching up on what was happening with work through email after spending the entire day coaching, chauffeuring and chaperoning the boys.

The only way I can see how Shang took this path is that he might have viewed using fraudulent credit card numbers as sort of an innocuous act where only the illegal escort service suffered a financial loss. Similarly, since the fraudulent checks were not based on real bank account numbers, the escort service simply could not collect payment. I believe that Shang used this scheme to hide these episodes from me because I reviewed and paid the credit cards each month and would have found out what was going on, and I also believe that Shang was more easily able to deny what he was really doing - if he didn't pay he wasn't really cheating on his wife. This enabled him to lead the productive and well-respected life he led 99% of the time while engaging in this criminal action the rest of the time.

As you might imagine, Shang and I have spent much time talking about this situation. Although it sickens me to think of him with other women, I am able to view his obsession as an addiction, like alcoholism or drug use. I just couldn't imagine how he got started down this path. Although he insists that nothing I did lead him down this road, I finally figured out in one of our long conversations that there was something we did earlier in our marriage that I eventually stopped him from doing that may have played a major role in his decision to act on his fantasies. He did ask me about it at the time, but I wasn't comfortable with the subject and couldn't give him a reason for not engaging in that practice any more. It didn't even occur to me that it was important to him, as it is something that most of us would say is for a woman's pleasure only. I do wonder if I had been more receptive to trying that again if I Shang would have chosen the path he took. He insists that is not the case, but I am not so sure.

I can't imagine what the next few years of our marriage will be like. Although we have never led an extravagant lifestyle, I don't know how well I will handle the pressure of the change in our financial status and the need to support our daughter's continuing education. I have spent almost our entire marriage working only part time. I have coached for 26 years at the same lower income Montgomery County high school, teaching only in the years before our daughter was born and then working in a community center after. Since that time my teaching certificate has expired. I started working in our city library as a shelver when our daughter started college, and have always felt good about the community service aspect of my jobs. I don't know what sort of full-time work I can find, and not having Shang's education and years of job experience will make my effort to support the three of us very challenging if he is incarcerated. We are currently struggling to find a way to extend our health care plan.

I find great hope in the fact that I truly believe that Shang is remorseful and very serious about treatment. This has had a devastating effect on all the lives that he has touched, and I feel certain that he will never engage in either illicit sex or illegal activities again. I am pleased to say that we are already undergoing regular pastoral counseling sessions with our church minister, and hope to find a marriage counselor when our financial situation becomes less tenuous. Shang has been seeing a psychologist and is looking to find a psychiatrist with experience in sex obsessions who is under our current health care plan. As odd as it sounds, I think our marriage will eventually be stronger, because we are reaching a much higher level of communication, and because Shang has acknowledged that he needs help. Never before had he shared with me the difficulties of growing up as an ethnic outsider in the South of the 'fifties and 'sixties. He has spent his whole life trying to do things single-handed and unaided, so this is a tremendous step for him and us. He has also asked for and received the help of the tremendous numbers of young men who played for and later coached with him over the years. This willingness to seek the help and support of family and friends is indeed a positive indication that he will be able to conquer his addiction and compulsions.

Although some of my acquaintances are surprised I am staying with Shang, I am completely certain that that is the right course of action for me as well as for him. We have had a wonderful 26 years of marriage. I have no doubt that he does love me and our daughter. Telling me, and then our telling her was the most difficult thing a person could ever do. Yet, in the midst of all of the pain and ugliness of this case, I have no question that I would rather face this with him than to have had him succeed in his plan to do away with himself before the charges were brought so that we might remain unaware of his actions and our memory of him would remain untarnished. I picture all the kind, loving things he has done for me and so many people over the years, the amount of time he has dedicated to his profession in transportation and alternative fuels as well as his passion for volleyball, and I can only hope that he will receive probation so that he can continue his treatment and recovery and once again become a viable contributor to our society.

I am sorry to have rambled on at such length, but I obviously feel very deeply about this and very strongly about this good but flawed man. Thank you for taking time out of your very long day to read this.

Sincerely,

Wanda Hsiung

Judge Ricardo M. Urbina
U.S. District Court for the District of Columbia
E. Barrett Prettyman U.S. Courthouse
333 Constitution Avenue, NW
Room 6006 Annex
Washington, DC 20001                            November 29, 2006

The Honorable Ricardo M. Urbina:

I am Fred Wong, 54 years old, born in Washington, DC, went to DC public schools,
graduated from Wilson High School and George Washington University. I live in
Bethesda Maryland and my federal career has been and continues at the National
Institutes of Health.

I became involved in the Maryland Volleyball Program (MVP) in 1993 as a parent when
my son started playing volleyball. Since that time I helped the program as a chaperone
and continue as a coach today. Mr. Shang Hsiung for all these years gave tirelessly to the
volleyball community. He conducted practices for this boy's program, hosted
tournaments, took these boys to tournaments; coached the Men's team at the University
of Maryland, running their practices, taking them to tournaments; coordinated the Region
boy's program; served to coordinate the East Coast collegiate volleyball association;
served as a faculty member of USA volleyball for coaches; and helped the North
American Asian community with annual volleyball tournaments.

From my many years of participating in volleyball through the MVP and Asian
community, I can see the positive impact left by Mr. Hsiung. He has helped to develop
many adults of fine character as they participated in volleyball. This came about because
of the MVP standard of conduct and the respect he earned through personal relationships.
He did not have to demand authority, but rather others sought him out for advice and
recognized his expertise. My personal relationship with Mr. Hsiung will continue to be
supportive despite his mistake. He has sought forgiveness and expressed deep regret for
jeopardizing the trust that he established with us.

With this brief letter I respectfully ask the court to consider how much Mr. Hsiung has
already given to the community. Thank you.

Sincerely,

Fred Wong

Fred Wong
7605 Dwight Drive
Bethesda, MD 20817

Judge Ricardo M. Urbina                                      22 November 2006
U.S. District Court for the District of Columbia
E. Barrett Prettyman U.S. Courthouse
333 Constitution Avenue, NW
Room 6006 Annex
Washington, DC 20001


Dear Judge Urbina,

Thank you in advance for reading this letter. My family and I are writing on behalf of Mr.
Shang Hsiung and his family.  I am 50 and live in Bel Air, Maryland along with my wife
Julie, sons Andrew 19, Adam 17, and Wil age 14.  We have known the Hsiungs since
2003 and maintained relatively close contact through 2005.

Our association began in the fall of 2003 when our oldest son Andrew tried out for and
made the Maryland Junior Olympic Volleyball Team, coached and managed by Shang.
Andrew, a High School Junior at the time, was a good athlete who played a number of
varsity sports, but was new to the sport of volleyball and very inexperienced in playing
volleyball.   However, Shang saw his potential and accepted him on the team.  For the
next two years, Shang worked closely with Andrew and developed his skills; physically,
morally and emotionally, as they played in both U.S. Regional and National
Tournaments.  After a strong senior year, Shang was instrumental in helping Andrew
with his college applications to schools known nationally for Men's Volleyball. As a first
year college player, Andrew was recognized as the National Newcomer of the Year and
as an American Volleyball Coaches Association First Team All-American, awards that
Shang was instrumental in laying the foundation for Andrew achieve.

**Shang Hsiung took a chance on a developing player, who had little confidence in his
own abilities, and helped mold him into a young man with the right priorities in life.
My wife and I witnessed first-hand Shang's penchant for doing the right thing, his
friendly but firm touch with our son and all of the team members, and above all
else,  having the boys best interests at heart. He epitomized integrity and morality
when running the team.  He and the team represented Maryland's Volleyball
Program to the highest standards.**

Shang obviously made a mistake in judgment and has suffered untold embarrassment for himself and his close knit family. We are quite sure that he and Wanda's college age daughter has perhaps suffered the most of all. We would expect that Shang will make financial restitution to the government or to any other individual who was harmed by his actions. This, coupled with the personal embarrassment he has suffered, is a strong punishment and given Shang's solid citizenship, seems appropriate. We urge you to consider all that Shang has meant to his family, our family and how many other young men have been positively mentored when you develop and deliver your sentence.

Sincerely,

James R. Cranford
1400 Tayside Way
Bel Air, Maryland
21015
410-836-8184

November 22, 2006

Judge Ricardo M. Urbina
U.S. District Court for the District of Columbia
E. Barrett Prettyman U.S. Courthouse
333 Constitution Avenue, NW Room 6006 Annex
Washington, DC 20001

Your Honor,

My name is Anthony Suber and I am writing to you on behalf Mr. Shang Hsiung.
My wife and I currently live in Richmond, Virginia where I work as a Realtor. We
have been close friends to both Shang and his wife Wanda for over 20 years.
We initially met Mr. Hsiung through my wife's participation in volleyball with Mrs.
Hsiung. We have maintained a close relationship even after we moved from the
DC area to Richmond 10 years ago. Our children have grown up together and
we consider the Hsiung's to be one of our closest friends.

We were shocked to hear of the circumstances that have prompted me to write
this letter. They show a serious lapse in judgment on the part of my friend
Shang. I know him to be a very different person from the one you see in your
court room. I know him as the Youth Coach who has donated his time as I do to
help others for over 15 years and as the friend who has helped me and others
when we needed financial assistance to make the mortgage payment. It was not
done for the notoriety but because it is the right thing to do, to help someone in
need when you have the ability to do so. I don't pretend to understand what led
to his lapse in judgment but I intend to be there in support of whatever he needs
to recover from it. This is truly a good person that has made a bad mistake.

I ask you to please consider an option that takes into account all of the good
things that Mr. Hsiung has done over the years. I am sure that some form of
punishment is necessary in this case. But his life will never be the same and to
further punish him by incarceration would not be just. Thank you for your time
and consideration.

Sincerely,

Anthony Suber
9421 Wild Rose Ct.
Mechanicsville, VA 23116
804-350-5429

Judge Ricardo M. Urbina                                    November 21, 2006
U.S. District Court for the District of Columbia
333 Constitution Avenue, NW
Room 6006 Annex
Washington, DC 20001

The Honorable Ricardo M. Urbina:

My name is Feliciano P. Soriano, age 73, U.S. Army retired and living in Fairfield,
Pennsylvania.

I was an assistant coach to Coach Shang Hsiung for the Boys 14 and Under Maryland
Junior Olympic Program.   Coach Shang personally coached the 16 and 18 year old
teams; also the University of Maryland Men's volleyball team.

Unlike coaching seasonal sports, coaching youth volleyball is a year-round commitment.
Coach Shang coached the youth teams at least three times a week all year, and the
University of Maryland team at least three or four nights a week in addition to playing
away games on most weekends during the volleyball season.  With respect to the youth
program, most tournaments were played during national holiday weekends all year
wherever the tournaments were held in the country.

I gave up coaching after over five years as Coach Shang's assistant, because I was tired
and "burned out" giving of my time coaching my youth teams all year long, and instilling
in them, as Coach Shang did, work ethics and human values necessary for our players to
take their place in the world.  Coach Shang coached for over 20 years that I am aware of.
My younger son played for him at age 15; he is now 35 years old. Coach Shang was
coaching volleyball long before my younger son joined his team.

What relevance is coaching volleyball to what he did?  Perhaps nothing at all.  All I can
offer in his behalf is that he coached hundreds of players, many of whom are giving back
to volleyball what Coach Shang instilled in them.  To a man, they all love and respect
him; he made a tremendous difference in their lives.  And as I, they are equally puzzled
over his tragic situation.  We mourn over the devastation his wife and daughter have
suffered and the ruination of his otherwise sterling career.   I am sad.

Many men I know have or have had a "dark" side to them.  Most have come out of the
cold, so to speak.  Perhaps Coach Shang is suffering from a disease that befalls addicted
gamblers, drug dependents, and alcoholics.  Perhaps Coach Shang needs treatment of
some sort.  I don't know.

 I pray daily for Coach Shang and his family.  I am praying that he is put on probation
instead of being incarcerated.  I still believe that Coach Shang is a good man who
deserves a second chance.

Sincerely,

Feliciano P. Soriano
Colonel, (U.S Army, Ret.)

Judge Ricardo M. Urbina
U.S. District Court for the District of Columbia
E. Barrett Prettyman U.S. Courthouse
333 Constitution Avenue, NW
Room 6006 Annex
Washington, DC 20001

Cynthia L. Hollies
1 Bel Pre Ct.
Rockville, MD 20853

The Honorable Ricardo M. Urbina:

I am writing this letter on behalf of Shang Hsiung, who is awaiting sentencing by you after having pled guilty to wire fraud. In all the time I have known him, I would never have expected this. I have known Shang as a casual acquaintance through volleyball for about 20 years before my two sons began to play for his program about 5 years ago. This past year I got to know Shang very well because I was the assistant coach for the team for which he was the head coach. We spent a fair amount of time together in the gym and at various volleyball tournaments, including a 4 day stay in Minneapolis, Minnesota for Nationals. A large part of Shang's coaching style was to reinforce the concepts of good sportsmanship with his players. He tolerated no bad mouthing of referees, line judges, opponents, or team mates. He expected his boys to do the right things both on and off the volleyball court. In all the time I have known him, I have never seen him do anything that did not set a good example for his players. In a previous year, when some of the players for his club were found drinking, he notified the parents of the players involved, the other parents in the volleyball club, the colleges to which the boys had applied, and USAV, the governing body for volleyball. He made it very clear that he did not condone their breaking the club and USAV rules as well as the law and that he felt honor bound to inform the others who might be affected by their misbehavior. After he entered his guilty plea, he also informed those of us in the volleyball club about his misconduct. It was obvious that it causes him a great deal of pain that he did not live up to the personal code of conduct that he sets for himself and that he again felt honor bound to inform others who might be affected, this time by his misbehavior.

It is perhaps appropriate that I also tell you a little about myself. I am a high school science teacher in the Montgomery County, Maryland public schools and therefore I am very aware of the influence adults can have on teenagers. Coaches and teachers need to hold themselves to a higher standard because they have so much influence over the development of the next generation of adults and therefore direction our society will take in the future. I work hard to build a kinder and gentler society in my classroom, because I know although not all of my students will become scientists all of them will become part of the society in which we live. I see Shang as a kindred spirit in that respect: the boys won't all be great players, but they can all be great people. Even now, I would trust my sons to spend extended time with Shang knowing that he would set a good example for them and expect them to be moral and upright citizens. I believe what Shang did was terrible. He hurt his family, his coworkers, his friends and his players. However, I also believe that Shang is basically a good man.

You have a very difficult job to set sentences for offenders. I imagine that is very hard to find a consequence which will hopefully help rehabilitate the offender yet also be fair to the victims. I know Shang is punishing himself for not being the man he wants to be, and has portrayed himself as being. I know that Shang has lost his job and his standing in the volleyball community, both of which were very important to him. I imagine, given the nature of his crime, that finding any job will be difficult and finding one similar to the one he resigned will probably be impossible. This means he will be paying financially for his mistake for the rest of his life with less earning power, less income, less retirement. I believe it is only fair for him to also pay restitution and apologize to the people from whom he took money. I have a harder time believing that jail time will do anything to help the victims or Shang. I have no idea how much weight letters from friends carry as you prepare to pass judgement, but I do hope that you will consider all the ways in which Shang is and has been a valued member of our community when you decide his fate.

Sincerely,

Cynthia L. Hollies

5 Monitor Court
Olney, MD 20832-2440

November 21, 2006

Judge Ricardo M. Urbina
U.S. District Court for the District of Columbia
E. Barrett Prettyman U.S. Courthouse
333 Constitution Avenue, NW
Room 6006 Annex
Washington, DC 20001

The Honorable Ricardo M. Urbina

Dear Sir:

    I am writing this on behalf of Shang Q. Hsiung, my younger sister's husband of 26 years. As an introduction to myself, I am a life-long resident of Maryland (1951), married my first and only wife in 1974 (another Maryland native) and have lived in Olney with my family since 1984. My 23 year-old son lives at home with my wife and me; my daughter and her Marine officer husband of 4 years just moved to Stafford, Va. for a post of duty (we are expecting our first grandchild next spring). I am an employee of CACI, Inc., and work onsite fulltime with the DEA in Arlington, Va. I have been a part of DOJ's computer IT-related efforts over the last 9 years. Last, but not least, I serve as a deacon in our local church.

    I first met Shang the year before he and my sister Wanda were married. I attended their wedding in 1980, and have visited with him and family during holidays and other family times ever since. Shang has always been attentive to his wife and daughter as evidenced at these extended family get-togethers, and I have never known him to lose his temper or to betray their (and my) trust. In matters regarding finance, as in contributing towards family gifts or other money matters, Shang has always acted properly, and I have felt that I could trust him implicitly. When visiting together he and I would speak of our respective families and their activities together. Shang also spoke enthusiastically of his work responsibilities at DOT, of which he was very proud.

    As you are probably aware, Shang has a long history with the U. of Md. men's volleyball teams. We have heard much over the years of his (and my sister's) tireless work in the many athletic and after-hours engagements, and has personally run numerous summer volleyball camps. Shang was recognized in 1998 by the United States Olympic Committee as the USA Volleyball Developmental Coach of the Year.

    My other sister's son has attended these camps – could not wait until he was old enough to go – and I understand the youth and college students respond enthusiastically to his coaching and look up to Shang as a model.

    Therefore you can appreciate my shock at the current disclosure. As he has admitted his wrongdoing in public, in court, Shang has also sent those of his close family letters of apology, and I believe he is racked with guilt – as he should be.

    The acts described in various newspapers do not sound at all like the Shang Hsiung that I know, but I'm sure you hear this often. That he would jeopardize his career, his decades of volley-ball coaching, but most especially his relationship with my sister and his daughter, is heartrending and tragic.

    I believe that justice requires complete restitution – and apology – to those that have been wronged. Shang has lost his job, ruined his professional and personal credibility, and jeopardized his relationships as husband and father. He will no longer be trusted in the sports activities which have been a major love of his life. However, while I felt initial disbelief and anger upon hearing the news, my sister has decided to accept his

–2–                                         November 21, 2006

repentance and forgive him.  Since Wanda who was wronged perhaps the most can forgive him, I can do no less.

Therefore I would like to ask for your leniency in the matter of Shang Hsiung's sentencing.  Shang has never been a violent man; and the nature of his wrongdoings appear inconsistent for a man of his intelligence and abilities.  I believe that he has already paid (and will continue paying) a high price for his wrongdoings.  However, his wife and family need him to begin his reformed life.

Sincerely,

Alan R. Jenkins

November 16, 2006

Judge Ricardo M. Urbina
U.S. District Court for the District of Columbia
E. Barrett Prettyman U.S. Courthouse
333 Constitution Avenue, NW
Room 6006 Annex
Washington, DC 20001

The Honorable Ricardo M. Urbina,

I'm the sister of Shang Quen Hsiung, and am writing you, in support of my brother. I am
44 years old, work for IBM in their Federal Software group and have lived in the DC area
for over 30 years. As Shang Q. is my older brother, I've known him my entire life.

Shang Q. has always been a wonderful older brother, supportive of me as well as the
entire family. One example of this support, is his current care of our father – G. S.
Hsiung. Our father is 86 years old, physically and mentally frail, but he's able to live,
somewhat independently, with Shang's help. As I'm sure you're aware, caring for an
aging parent is very taxing - physically, as well as emotionally. Though Shang could
easily be "doing nothing" at this time, instead he volunteered to be the primary caregiver,
has been extremely committed to helping, and has maintained a great attitude as he
continues this help. His help has become a necessity, with the recent death of our
mother.

Though the news of Shang's issues was both shocking and terrible, I would ask for mercy
for my brother, in his sentencing. I do believe he is very repentant, for what he has done
and is taking the necessary steps to, outside of a jail term, address his issues. I also
believe both the immediate and extended family will provide constant support and
accountability, to prevent this from ever happening again.

Sincerely,

Shangying Hsiung
123 Jay Drive
Rockville, MD 20850

Judge Ricardo M. Urbina
U.S. District Court for the District of Columbia
E. Barrett Prettyman U.S. Courthouse
333 Constitution Avenue, NW
Room 6006 Annex
Washington, DC 20001

November 16, 2006

The Honorable Ricardo M. Urbina:

My name is Shang-Hsiu Hsiung and I am the older sister of Shang Quen Hsiung. I am writing you on behalf of my younger brother. I am 57 years old and am currently a federal civil servant. I moved back to the DC area in 2001 to be closer to my family and friends.

I have known Shang Quen all his life and can identify myself with him. I know that he is a good and honorable person. In a social setting Shang Quen is quite shy. His out-going personality is revealed in his pursuit of academic achievements. He received a full scholarship to attend Northwestern University for his graduate studies in transportation. His unselfish and continuous devotion to the Maryland volleyball leagues spans over 30 years. This dedication has made a very positive impact on many teen-agers in our community.

I was very sorry to learn of Shang's wrongful act. He has brought shame to himself by committing this crime. I am pleased that he is acknowledging his crime and is taking full responsibility to make amends. I am sure he has felt the consequences already. .He has lost his federal job and does not know if he will be able to find comparable employment. He has resigned his leadership position in Maryland's volleyball leagues. At his sentence I respectfully ask for mercy to him and my family. I ask that Shang be sentenced to do good services for our community and my family, especially my elderly father's caring service.

Highest regards,


Shang-Hsiu Hsiung
6020 Stonehenge Place, Rockville, MD 20852

7930 Beverly Ave.,
Baltimore, MD 21234-5308
November 20, 2006

Judge Ricardo M. Urbina.
U.S. District Court for the District of Columbia,
E. Barrett Prettyman U.S. Courthouse,
333 Constitution Avenue, N,.W.,
Room 6006 Annex,
Washington, DC 20001

Dear Sir,

This has reference to Shang Q. Hsiung, my son-in-law.

I am a 79 year old civil service employee retired from the Social Security Administration in 1984 with a Commissioner's Citation. My daughter, Wanda, met Shang, a volley-ball coach, while playing volley-ball. He was a federal employee who had transferred here from Pennsylvania, and whose entire extra-curricular activity was volley-ball

Wanda and Shang were married in 1980 and have one daughter who is now a student at Vasser. The whole family has been wrapped up in volley-ball from the east to the west coasts, and Shang has been recognized as "coach of the year" on several occasions. He has had to advance travel fare for some of the players, who are steadfast supporters.

Notwithstanding his Asian background, Shang has become an integral part of our family, and we have formed attachments to his family of birth. He has a computer with which he is quite literate and well aware of public access to government files. His government duties required his absence from home for extended periods, creating another temptation.

In face of the above, I will have to stand by Shang through punishment for his transgressions. The ramifications have already scarred him ; even a probation verdict will leave its mark.

Respectfully yours,

Jonathan R. Jenkins

November 14, 2006

Judge Ricardo M. Urbina
U.S. District Court for the District of Columbia
E. Barrett Prettyman U.S. Courthouse
333 Constitution Avenue, NW
Room 6006 Annex
Washington, D.C. 20001

SUBJECT: Mr. Shang Hsiung

Dear Honorable Judge Urbina,

I am Harry Guey-Lee, an acquaintance of Shang Hsiung. I have known Mr. Hsiung for over ten years, primarily through his active work with the Maryland Volleyball program, his work and counsel to the Hip Sing Chinese 9-man volleyball group, and through his spouse, Wanda, who is the coach of the Varsity volleyball at Kennedy High School where my son, Steven, is a senior. Steven has been coached by both Wanda, at the high school level, and by Shang, through his MD volleyball camps. Steven developed a love for volleyball from his association with Shang and Wanda, where clearly their passion in the sport and well being of each individual player has positively impacted hundreds of players via their mentoring over the past years. I am presently a manager with the U.S. Postal Service, working in Supply Management. I have been an employee of the Federal Government for over 34 years. I am 56 years old, residing in Silver Spring, MD with my spouse, Lily, and our son.

I am providing this letter to support the character of Shang. He has dedicated over 20+ years of his life teaching, coaching, and developing volleyball players, coaches, and advisors in the Washington DC area. He has devoted countless hours building the character of players, the team spirit necessary towards success, and the fundamentals to become a better player. He has imparted his knowledge freely to all and asked for little in return. He has earned the respect of many many individuals in the volleyball community, and for nurturing and growing the level of interest in volleyball in Maryland. His former players and colleagues are loyal to him and will surely vouch for all that he has done. But volleyball was mainly the channel that we view Shang.

He is a caring parent to Amanda, an only child, who he loved dearly and wanted her to be a success in school and volleyball – so far, so good as she is on the college volleyball team at Vassar. He and Wanda were the quintessential couple whose passion for volleyball built their relationship, and whose marriage and growth matured with this passion. They attended each other's games, shared the duties of the Maryland volleyball program, and supported each other's successes.

While I did not know what work Shang was doing for the Federal government, and do not dispute the indiscretions that have been publicized, I do believe that punishment of a lengthy jail sentence is not the best answer or corrective solution for him. I think that reimbursement is to be

expected to those who he may have defrauded. I think for punishment, a form of community service in volleyball may be warranted. I suggest volleyball camps, provided gratis, for underprivileged kids may be a start. I recommend that he be allowed to continue running the MVP program and sponsor the club teams, once again, gratis, to those players who looked up to him and respected his abilities. Finally, based on Shang's expertise on alternative fuels, that he writes a paper to be submitted to his former agency, outlining where he believes this program should be headed, and how progress can be made towards it.

I sense from many of his most loyal people, the contrition and shame, he feels from this episode. We are all anxious to get this behind him and allow him to rehabilitate through alternative means than significant time in jail. I understand what he did is wrong, and clearly, I believe he understands what he did was wrong. The greatest pain was to his wife, Wanda, and from my talking to her, I believe she is disappointed in Shang but, is also a believer in all that is good in him. She is not forgetting this, and is accepting of the situation. This likely will make them an even stronger couple. Justice and society can be served in many different forms, and these are merely my suggestions. Let's let them move forward and put this event behind them.

Sincerely,

Harry Guey-Lee
1924 Middlebridge Drive
Silver Spring, MD 20906
301-460-0610 Home
202-268-4110 Work
HGL1087@aol.com  Email

Hans C. Fuller
2804 Green Shade Ct.
Ellicott City, MD 21042

November 11, 2006

Judge Ricardo M. Urbina
U.S. District Court for the District of Columbia
E. Barrett Prettyman U.S. Courthouse
333 Constitution Avenue, NW
Room 6006 Annex
Washington, DC 20001

Honorable Judge Urbina,

I am wiring in support of Shang Hsuing, who was my volleyball coach at the University of Maryland between the years of 1988 and 1992. I am currently 38 years of age, married with 3 children, employed by Emerson Electric Co. as VP of Marketing, and residing in the Baltimore, MD area.

My relationship with Shang has been in the context of athletics and I feel that I got to know him quite well during the years I played on his team. During many practices and matches I got to know him as a coach and during many long trips to play other teams I got to know him as a person. In all the years I have known Shang, I have only known him to be a true professional as a coach and chaperone. And having seen many interactions between him and his family, I have only ever known him to be an extremely loving husband and father.

Shang has given a tremendous amount to the community through his coaching and I sincerely believe that anyone that has played on one of his teams became a better person as a result of their association with him. Myself included.

Knowing Shang, I am sure that the shame he has brought on himself, his family, and the athletic programs he lead is significant punishment in and of itself. I continue to have the utmost respect for all of the things that Shang has done for me and for many others and I hope that you will take this into consideration during his upcoming sentencing.

Sincerely,

Hans C. Fuller

Kathy Velky
13038 Ingleside Dr.
Beltsville, MD  20705

November 13, 2006

Judge Ricardo M. Urbina
U.S. District Court for the District of Columbia
E. Barrett Prettyman U.S. Courthouse
333 Constitution Avenue, NW
Room 6006 Annex
Washington, DC 20001

The Honorable Ricardo M. Urbina:

I am writing to you concerning Shang Hsiung. I have lived in the Washington area since my graduation from the University of Maryland, and am employed in a small demolition company owned by my husband and his partner.

I have known Shang since before he married my sister, for about 28 years. There aren't many people I respect as much as I do Shang.  He is a wonderful husband and father, and is a member of my church, Colesville United Methodist Church.

He has put an incredibly large number of hours into community service through his volleyball programs.  He has done so much volunteer work that it almost amounts to a second career.

Shang has run volleyball programs for teenagers for many years. He has given his personal time and expertise in traveling to the tournaments, acting as coach and chaperone, and tirelessly working to provide the opportunity for these young men to excel at this sport. He has been to Walter Reed Army Hospital, where he has taught double amputee patients to play "floor volleyball. "He has worked with the University of Maryland to host tournaments for high school and college players.

Apparently, Shang has made a mistake. I have talked at length with him and my sister, and I feel that perhaps the long years of working 2 careers took its toll. I don't know the reasons, but I still love Shang and respect him. I think that leniency would be appropriate in his case, and he will undoubtedly be punishing himself as well.

I hope you will consider the minimum sentence for Shang. He has made a mistake, but is a wonderful person, and still has much to offer his family and community.

Sincerely,

Kathy Velky

Judge Ricardo M. Urbina
U.S. District Court for the District of Columbia
E. Barrett Prettyman U.S. Courthouse
333 Constitution Avenue, NW
Room 6006 Annex
Washington, DC 20001

The Honorable Ricardo M. Urbina:

My name is Andrew Tang, and I am 16 years old. I am currently a junior at Winston Churchill High School, and live in Potomac, Maryland. I was first introduced into volleyball in the summer of my eighth grade at his summer camp. At first I did not like volleyball very much but with Shang's coaching I grew to become interested with the sport. I know Shang as a coach through MVP (Maryland Volleyball Program). Through his constant encouragement and relentless coaching, I have gained a passion and enthusiasm to play as much as I can. Although Shang has done wrong, he has never done anything to hurt anyone physically or hurt the players he coached. He never once mentioned about his job or what he did. He separated his private life from coaching and he had never set a bad role model for his players either. I still think of him as a wonderful mentor and a great person who never meant to do anything wrong. I believe he should not be heavily punished based on the merit of how much he has given to the youth of Maryland and to the community as a whole. Shang is a good person who only means well and has never stopped caring about volleyball and the players he coaches.

Respectfully,

Andrew Tang

1346 S. Holguin Court
Chandler, AZ  85248


December 4, 2006


Judge Ricardo M. Urbina
U.S. District Court for the District of Columbia
E. Barrett Prettyman U.S. Courthouse
333 Constitution Avenue, NW
Room 6006 Annex
Washington, DC  20001

The Honorable Ricardo M. Urbina:

My name is Paul P. Lee and I am 38 years of age.  I am a Principal Systems Engineer and
am currently working in the Aerospace and Defense Industry with respect to launch
vehicles.  My reason for this correspondence is to tell you about how Mr. Shang Q.
Hsiung affected my life in a positive way.  Hopefully, you will find the information I
provide in this letter useful for your sentencing of Shang.

I have known Shang for quite some time (for over the last twenty four years of my life).
And during that period he has been and continues to be a coach, mentor, father figure,
colleague, peer and a close and dear friend.  We have faced and experienced many
milestones together, both on the volleyball court and off.  Much of the milestones were
from Junior Olympic Boys Volleyball and from the University of Maryland volleyball team
where he was my coach and mentor.  Over that 8-year period, many championships were
won.  But the most important lessons that he has taught me over the years were hard work,
decision-making (which is key to improving one's quality of life) and accountability for
one's actions.  As an adult reflecting back on those invaluable lessons that he has passed on
to me, I have realized that he was much more to me than a coach and mentor.  He was really
a second father to me.  Without the lessons Shang has taught me, I would not be the man,
husband and father I am today (from a personal, moral and professional standpoint).  I use
these tools every day of my personal and professional life, and for that, I am extremely
grateful and indebted to him.

Some of the personal milestones that he has seen me through are: graduations from high
school, college and graduate studies; my grandfather's passing; my marriage; the birth of
my daughters, and my grandmother's passing.  So as you can see, he was not only a coach
and mentor, but most importantly, a father figure and dear friend.  For all of his life, he has
been a pillar of the community and served to improve the lives of many countless hundreds
of young men (who are now great citizens giving back to the community as well) with no

financial gain to himself. He has donated hundreds of thousands of countless hours of his time in using volleyball as a tool for passing on discipline and accountability to many kids and young men (whether they realized it at the time or not).

In light of the tragic set of events that have transpired, the player (i.e. Paul Lee) has become the coach and mentor. I have talked to Shang over the past two months and there is no one more devastated than himself over the poor decisions that he has made recently which lead to this case. In our discussions, I have asked for his word of honor to me that he find his moral compass and he responded definitively, "YES, I will." I know with certainty, that the mental anguish Shang is putting himself through currently is more than enough punishment for his actions. His recent action should not erase all the good that he has done for his community during his lifetime. So with that, I respectfully request that probation be seriously considered during his sentencing.

Respectfully,

Paul P. L

Paul P. Lee