# EXHIBIT 1

**ROBERT K MADSEN, PH.D.**
Clinical & Forensic Psychology
**Suite 303**
**5028 Wisconsin Avenue, N.W.**
**Washington, D.C. 20016**

March 6, 2007

Mr. G. Allen Dale
601 Indiana Ave., NW
North Building, Suite 900
Washington, DC  20004

**Re: Shang Hsiung**

Dear Mr. Dale:

Since mid October 2006 I have been seeing your client, Mr. Shang Hsiung, a fifty-four year old (DOB: 08/08/1952) professional man who had a rather distinguished 27 year career in federal service until he became involved with the solicitation of call-girl services and the payment of such by illegal means. Currently he stands guilty by plea to one count of wire fraud in violation of 18 U.S.C. § 1343 with a sentencing date of March 13, 2007. In making the referral you asked for an initial evaluation into his character and propensities with subsequent follow-up treatment, as deemed needed, since Mr. Hsiung had requested such when he first contacted you for representation. I was to report back to you by the first week of March as to my diagnostic findings, treatment progress, and proposed recommendations. The brief, largely summary paragraphs below relate my impressions and beliefs as promised.

**SUMMARY**

Interview data suggest that Mr. Shang Hsiung is a man of many strengths and laudable involvement in the social and work arenas outside of his illegal behavior involved in the solicitation of call-girl sex and payment for such by fraudulent means. Interviews and testing reveal he has the personality and attitudes ripe for development of a sexual addiction, and he has developed such accordingly. While engaged in treatment, designed to help him gain insight into these actions and behavioral control over them, he has been candid, honest and diligently engaged. I believe he has made solid progress to date, but he has a ways to go. He has requested that I pursue this with him and I have done so on a schedule with which I am comfortable. I recommend that he be given a period of prolonged supervision in order to bolster the resolve he has. I note that his sense of remorse and guilt are keen, as is his resolve to remove this stain upon his honor.

**PROCEDURES EMPLOYED**

Upon meeting Mr. Hsiung I spent an initial period in reviewing the various parameters of our engagement, e.g. the need for honesty/candor, the guarantee of confidentiality, the proposed procedures/tests to be employed, etc. After securing his consent on all points, I then took a moderately detailed history and performed a brief mental status examination. This part of the examination took 1.70 hours to complete. Upon his return for a subsequent session I then probed deeply into his actions in securing and paying for call-girl services. This session took 1.30 hours. During the next two

sessions totaling 3.50 hours I gave Mr. Hsiung a series of psychological tests covering personality style and so-called "normal" and "abnormal" personality functioning. The last test utilized was a specialized instrument specifically designed to assess his sexual functioning and propensities.[1]

These tests were taken in a secluded testing room in my office. He took an average amount of time to complete them. I note that the validity indicators on the three that have such (EPQ-R, 16PF & MSI-II) all strongly suggested that the results were valid. I note as well that in my subsequent monthly sessions with him he has always seemed to be candid, honest, and actively engaged in all aspects of a treatment regimen we have embarked upon.

## BRIEF DATA SYNOPSIS
### Historical

Results from the history review and the mental status exam <u>did</u> <u>not</u> suggest any untoward problems that rise to the level of a seriously debilitating DSM-IV-R diagnosis, e.g. such as schizophrenia or bipolar depression. In fact, his history and background are rather laudatory, revealing a man who matured over the years from the normal vicissitudes of youth to a seasoned man with a stable marriage of 26+ years, which has produced a daughter who is now in college at Vassar in New York. His history also includes the attainment of a BS in Civil Engineering from North Carolina State University in 1994 and a M.S. in Transportation from Northwestern University in 1996. Moreover, he had completed 27+ years of responsible work in the Federal Government, dating back to 1979, where he had risen through the ranks to a senior transportation management specialist earning in excess of $118,000 per annum. He has also had a lengthy period of devoted service in the community by coaching volleyball, thereby touching for good many lives. My point is that besides having disgraced his family and friends, he also has shamed his coworkers and many in the community by his illegal actions. To say that he now experiences shame and humiliation does not do justice to his extreme sorrow, regret, and despair.

### Testing

Data from the EPQ-R, the test of personality style, were striking in their strong suggestion that Mr. Hsiung is emotionally stable (Neuroticism @ 16th percentile) but

---

[1] The test used for assessing personality style is called the Eysenck Personality Questionnaire, Revised (EPQ-R). Along with a scale assessing one's attempt to dissimulate, it provides scores on the three core areas of functioning most related to clinically relevant behavior, namely Extraversion, Neuroticism, and Psychoticism. I gave two tests designed to assess "normal" functioning, the Sixteen Personality Factor Test, 5th Edition (16PF) and the Guilford-Zimmerman Temperament Survey (GZTS). The former, along with its validity and summary scales, measures the sixteen dimensions of normal personality that have been identified through factor analysis, such as Interpersonal Warmth, Abstract Intelligence, Ego Strength, and Dominance. The latter provides scores across ten dimensions believed to have particular relevance to social interactions. The instrument employed assessing "abnormal" functioning was the Millon Clinical Multi-axial Inventory, Third Edition (MCMI-III). Along with its validity scales, this test measures a range of pathological variables from major mental disorders, such as schizophrenia, to more enduring patterns of dysfunctional personality characteristics, i.e. personality disorders. It also spends considerable time in assessing substance abuse, from alcohol and other drugs, prescription and/or illegal in nature. The last instrument is a test designed to assess one's sexual knowledge, sexual attitudes and similarity to groups of known sex offenders, such as child molesters and rapists. That instrument, the Multiphasic Sex Inventory, Revised (MSI-II) was the only measure not scored in my office. It had to be sent to a national clearinghouse for scoring.

extremely introverted (Extraversion @ less than 1%). These summary factors suggest he can maintain his equanimity in the face of emotional stress or pressure, but they also indicate a socially uncomfortable, if not maladroit individual who would have great difficulty in satisfying his needs vis a vis others.[2]

The results from the lengthier and more complete 16PF supported and extended these EPQ-R results rather well. On this test's global or summary factors, Mr. Hsiung had an Extraversion score within the bottom 1% of a normal curve, exactly what the EPQ-R had revealed with different questions and format. On the secondary Anxiety factor, however, this test suggested he was not that emotionally "stable," but rather "unstable" by nature (Anxiety at the approximate 93rd percentile). The extreme introversion noted here, like with the EPQ-R mentioned above, is the most important factor of note because it predicts easy conditioning into habit patterns, be they good or bad. If he is emotionally "unstable," however, it is even more significant because these two scores then place him squarely into the so-called melancholy category coined by the ancient Greeks. That melancholy category comprises the vast majority of diagnostic categories noted in the DSM-IV-R. The fact he can generally "rein in" his more untoward impulses, however, is suggested by high average scores on three subsequent summary factors (Tough Poise, Accommodation and Self-Control).

I could say much (even pages) about what is revealed in Mr. Hsiung's primary 16 factors. Suffice it to say here that they are strongly suggestive of the type of "oblique offenses" committed here that seem to relate more to an opportunistic expression of a developing compulsive addiction that went unchecked. Mr. Hsiung's GZTS scores corroborated the above conceptualization by indicating from yet another set of questions and another format that he is in the top 99% on a scale of shyness, yet equally high on a scale of restraint. It is precisely this type of individual that develops quick and strong habit patterns, such as a sexual addiction, but is capable of keeping such in check most, but not all of the time.

Of particular interest, therefore, were Mr. Hsiung's MSI-II scores. On this test, as stated above, his scores were valid and reliable. He did not try to appear either favorably or unfavorably. It was striking, then, when he produced scores indicating that he has adequate sexual knowledge and beliefs, but subsequently showed himself to be "highly sexually obsessed." At other places on this test he was noted to be addicted to pornography and to have several body image criticisms that upset him. Furthermore, he was high on a scale indicating he is lonely and emotionally needy, and well within the midrange of those who act out their sexual problems. All of these test findings are in line with having a sexual obsession. When one looks at how such an addiction might be expressed, his scores were classic in nature. This is to say that his scores indicate, one, that he has recognition that the sexual behavior involved pleasure and excitement from planning and acting out that behavior, and two, that it involved much planning and scheming. Moreover, he recognizes that he has been "out of control," though feeling ashamed/guilty and in need of treatment. The MSI-II, therefore, sealed for me the

---

[2] This stable-introvert combination, called "phlegmatic" by the Greeks 3000 years ago, has been noted to insulate one somewhat from the ravages of life's pressures and stresses. On the other hand, someone so introverted is likely to need to "turn down" the volume of life in order not to be overwhelmed by perceptual chaos. Also he is likely to be very inhibited and serious about things with extreme shyness and timidity in social situations. Such scores point up how his actions would have been over-compensations for a sense of inadequacy, especially if his sexual needs were unmet, as he asserted they were. It should be noted as well that introverts are those who condition easily, developing both good and bad habits much more easily than extraverts or ambiverts.

diagnosis of a sexual addiction (DSM-IV—R: 302.9 – Paraphilia NOS) requiring treatment.

During our subsequent sessions, after interviews and testing were completed, Mr. Hsiung has strongly desired to address this sexual addiction. Accordingly, we have embarked upon a regimen designed to bring to him a conscious awareness of this addiction and how he can prevent himself from expressing inappropriately, in any way, his sexual problems. I am not going to discuss here that regimen, or the elements involved, because of privacy concerns. Suffice it to say that I know from my 12+ hours with him, that he has learned some important things about himself and how he can avoid future difficulties. I <u>do</u> <u>not</u> believe that he poses any current threat to the public health or welfare by repeating any of these issues, but I am a strong believer in layers of supervision (motivation) that aid one's resolve. Accordingly, I would recommend that sentence-mandated authorities, like probation officers, monitor Mr. Hsiung in order to strengthen his resolve. I also will continue to work with him as best I can.[3]

Let me say in closing that while I do not believe Mr. Hsiung even needs supervision to avoid a repeat offense, I understand that supervision is a necessary component of any post sentencing structure. My only additional suggestion, therefore, is that by getting some sensitivity training he might even be in a better position of never finding himself in such a fix again, but this is more optional than not. Of course, it goes without saying that I believe he should continue in counseling, without interruption. He needs this in order to continue to address the elements of his addiction and to address the anguish he feels as a result of the disruption to his life occasioned by this incident.

I certainly wish Mr. Hsiung well at this time. I will continue with him indefinitely, as he desires and the court allows. The interested reader may contact me at the above address and/or phone numbers for any clarification on these presents.

Sincerely,

(Signature Submitted Electronically)
_____
Robert K. Madsen, Ph.D.

---

[3] Mr. Hsiung does not belong to any of the insurance plan(s) with which I am affiliated. I am not cutting corners in the treatment regimen, however, but I am spacing out our contacts while reducing my fees.